## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JESSICA HALEY FURR HIGGINS,<br><br>Plaintiff,<br><br>v.<br><br>FRANK J. BISIGNANO,[1]<br>Commissioner of the<br>Social Security Administration<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. 24-CV-480-GLJ

### OPINION AND ORDER

Claimant Jessica Haley Furr Higgins requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED AND REMANDED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security

---

[1] On May 6, 2025, Mr. Bisignano became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Mr. Bisignano is substituted for Leland Dudek as the Defendant in this action.

Act "only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do his previous work but cannot, considering [her[ age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether the correct legal standards were applied. *See Hawkins v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the

---

[2] Step one requires Claimant to establish that she is not engaged in substantial gainful activity. Step two requires Claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If Claimant *is* engaged in substantial gainful activity, or her impairments *are not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If Claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where Claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show that there is significant work in the national economy that Claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if Claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

Commissioner's. *See Casias v. Sec'y of Health & Hum. Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Instead, the Court must review the record as a whole, and "[t]he substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Univ. Camera Corp. v. NLRB*, U.S. 474, 488 (1951). S*ee also Casias*, 933 F.2d at 800-01.

### Claimant's Background and Procedural History

Claimant was 29 years old at the time of the administrative hearing. (Tr. 37). She completed high school and alleges an amended onset date of April 14, 2020, due to limitations imposed by generalized anxiety disorder with agoraphobia. (Tr. 37, 42). Her date last insured ("DLI") was March 31, 2023. (Tr. 284).

### Procedural History

On May 3, 2021, Claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. (Tr. 18, 215-18). Administrative Law Judge ("ALJ") Michael Mannes held an administrative hearing and determined Claimant was not disabled in a written opinion dated July 31, 2024. (Tr. 18-66). The Appeals Council denied review, making the ALJ's opinion the Commissioner's final decision for purposes of this appeal. (Tr. 1-7); *See* 20 C.F.R. §§ 404.971, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. (Tr. 28). At step two he determined that Claimant had the severe impairments of general anxiety disorder, panic disorder with agoraphobia, major depressive disorder, and bipolar disorder. (Tr. 21). At step four he found Claimant had the residual functional capacity ("RFC") to perform a

full range of work at all exertional levels. (Tr. 24). Due to psychologically-based limitations the ALJ found Claimant could understand, remember, and carry out simple and detailed tasks, make occasional related judgments, concentrate for two hour periods with routine breaks, persist for an eight hour work day and forty-hour work week, interact with supervisors and coworkers but only tolerate incidental/occasional public contact, and adapt to a work setting with some changes. (Tr. 24). The ALJ then concluded that Claimant was not disabled because there was work she could perform in the national economy, *i.e.*, laundry worker I, industrial sweeper cleaner, and linen room attendant. (Tr. 28).

## Review

Claimant contends the ALJ erred by failing to: (1) account for Claimant's sciatic nerve pain, (2) properly evaluate Claimant's obesity pursuant to Soc. Sec. R. 19-2p, (3) comply with Soc. Sec. R. 16-3p in analyzing Claimant's subjective symptoms, (4) properly analyze the psychological opinions, and (5) develop the record. The Court agrees with the first three arguments and finds this action should be reversed and remanded.

The relevant medical evidence reveals that in October 2018 Claimant established care with Chelsea Berges, D.O. who noted Claimant was obese with a BMI of 46 with no musculoskeletal pain and full range of motion and strength, bilaterally. (Tr. 408-09). Claimant returned to her primary care physician in April 2020 reporting panic attacks over minor issues at work and indicating that she had previously been diagnosed with bipolar disorder, type II, at Carl Albert Community Mental Health Center ("Carl Albert"). (Tr. 425). Claimant continued to report anxiety and panic attacks induced by, *inter alia*, thunderstorms, wind, proximity to others, leaving her home, and checking her mail. (Tr.

425-50). Dr. Berges ultimately assessed Claimant with a panic disorder with agoraphobia. (Tr. 452).

In November 2020, Claimant sought treatment with Carl Albert for her anxiety but was discharged in June 2021 after missing several appointments. (Tr. 751-52). Nonetheless, Claimant continued to routinely follow-up with her primary care physician for her anxiety, and it was noted Claimant had various nervous tics (e.g., finger and lip picking, hand flapping, and rubbing legs) in addition to an anxiety related rash bilaterally on her arms, legs, and feet. (Tr. 466, 472, 479, 493-94). In July 2023, Claimant presented to the emergency department with a wound in her arm after cutting herself with a kitchen knife as a means to relieve her anxiety because she was having intrusive thoughts about self-harm and her boyfriend was not nice. (Tr. 660-68,773). Claimant was referred to Carl Albert for inpatient treatment and a 72-hour hold but, after completing her intake evaluation, she was released. (Tr. 773).

On May 29, 2023, Jodi Ray, L.P.C., conducted a psychological consultative examination of Claimant, at which time Claimant presented with adequate communications skills and appropriate thought process, but twirled her hair due to anxiety. (Tr. 516-17). Counselor Ray opined Claimant is not capable of handling benefit payments because Claimant's mother paid her bills and Claimant reported she does not feel capable of doing so. (Tr. 516-18).

As to Claimant's physical impairments, the record reflects Claimant began complaining of hip pain in April 2022 and was assessed with left sciatic nerve pain. (Tr. 638-40). Claimant was positive for hip pain and arthralgias upon examination in February

2023, November 2023, and February 2024 (Tr. 646, 648, 775-779).   In December 2023 Claimant established care with Mills Chiropractic complaining of neck and hip pain, and neurological testing conducted in January 2024 revealed a positive kemps sign at L4-L5 and a positive foraminal compression test at C2-C7. (Tr. 788-91).   The record further reflects Claimant had a BMI ranging from 46 to 52 through her date last insured and she was diagnosed with obstructive sleep apnea, which required a sleep study should Claimant not be able to lose weight aggressively. (Tr. 411-43, 625, 783).

In 2023, state examiner Sarah Yokam, M.D. determined that Claimant had no severe physical impairments. (Tr. 71). As relevant to this appeal, Dr. Yokam's considered Claimant's obesity in finding Claimant had no severe physical impairments. (Tr. 71). State agency psychological consultants Ryan Scott Ph.D., and Joan Holloway Ph.D., found initially and on reconsideration that Claimant is able to concentrate and focus for two-hour periods with routine breaks, pace and persist for an eight hour work day, interact with coworkers and supervisors but only tolerate incidental/occasional contact with the public, understand, recall and perform simple and detailed tasks but not complex tasks, complete tasks that require some skills and judgment but that do not require doing complex work duties. (Tr. 75). State agency psychologists also found Claimant could adapt to some changes in the work setting but, due to uncontrolled psychological symptoms, Claimant will have difficulties maintaining concentration for complex tasks and will experience "some lapses on some tasks that require sustained attention." (Tr. 75).

At the administrative hearing, Claimant testified she engaged in mental health treatment through Carl Albert on a monthly basis. (Tr. 45). Her anxiety is triggered when

-6-

she is near a large crowd or around people who are screaming. (Tr. 48). She goes shopping once a week, drives daily to her parents' house, and attends the gym with a friend on at least a monthly, but sometimes weekly, basis. (Tr. 49-50). However, she often has difficulty being around the people at the store, will frequently twirl her hair when she is nervous, and may experience panic attacks. (Tr. 57) She further testified that she has nerve pain in her hip area which she treats with gabapentin and naproxen but has not received physical therapy or steroid injections. (Tr. 51). She attended chiropractic appointments weekly in the past but recently had to stop due to cost. (Tr. 51). She has no difficulty preparing meals or engaging in personal care, can walk, at most, two miles, and can lift approximately 30-40 pounds. (Tr. 51-53). Since April 2020 she has gone fishing with her son almost every weekend during the summer, and frequently visits parks. (Tr. 55, 57).

In his written opinion at step four, the ALJ extensively summarized Claimant's hearing testimony and most of the medical evidence of record. (Tr. 24-27). He then found that Claimant's statements about the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with treatment records, reasoning that they were inconsistent with the longitudinal treatment record and Claimant's activity level. (Tr. 26). The ALJ found the opinion of counselor Ray unpersuasive, reasoning it was not presented in vocationally relevant terms (Tr. 27). He found the state agency medical consultant's opinion persuasive concluding it was consistent with the longitudinal record and supported with an in-depth explanation. (Tr. 27). Lastly, the ALJ found the opinions of Dr. Scott and Dr. Holloway persuasive because they were (i) consistent with the record reflecting conservative and sparse treatment consistent of medication which showed some

improvement, and (ii) supported with "an in-depth explanation regarding the basis for the findings, including noting her mental conditions being managed conservatively with medication and a recent examination noting some indication of anxiety but was otherwise normal." (Tr. 26-27).

## I.    Sciatic Nerve Pain

Claimant argues the ALJ improperly evaluated her RFC. Particularly, Claimant maintains the ALJ failed to discuss Claimant's diagnosed sciatic nerve pain. The Court agrees. The ALJ does not discuss or address Claimant's diagnosis of nerve pain, the related hip pain, arthralgias, or positive foraminal compression and kemp sign test stemming therefrom at any point in his opinion.

The record reflects Claimant began experiencing sciatic pain prior to her DLI and, although Claimant's chiropractic visit and positive foraminal compression and kemps sign tests were outside her DLI, they too should be considered to "the extent it clarifies Claimant's health prior to the expiration of her insured status." *Carnes v. Comm'r of Soc. Sec. Admin.*, 2022 WL 794707, at *4 (E.D. Okla. Feb. 24, 2022) ("If evidence 'sheds light on the disability during the relevant time period,' it should be considered.") (citing *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004). Because the ALJ did find that the claimant had severe impairments, any failure to find Claimant's additional impairments severe at step two is considered harmless error because the ALJ would nevertheless be required to consider the effect of these impairments and account for them in formulating Claimant's RFC at step four. *See, e.g.*, *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("At step two, the ALJ must 'consider the combined effect of all of [the claimant's]

impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive step two.] Nevertheless, any error here became harmless when the ALJ reached the proper conclusion that Mrs. Carpenter could not be denied benefits conclusively at step two and proceed to the next step of the evaluation sequence.") (quoting *Langley v. Barnhart*, 373 F.3d 1116, 1123-24 (10th Cir. 2004) and 20 C.F.R. § 404.1523). *See also Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal. But this does not mean the omitted impairment simply disappears from the analysis. In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") (emphasis in original).

The Commissioner, citing *Brown v. Bowen*, 801 F.2d 361, 362-63 (10th Cir. 1986), argues that pain is not a functional limitation but an "issue for an ALJ to *consider* . . . whether a claimant's pain is so severe as to cause functional loss." There is no indication in this case that the ALJ *considered* Claimant's sciatic nerve pain in any regard and that is precisely what distinguishes this case from *Brown* wherein the "ALJ explicitly considered Brown's allegations of pain." 801 F.2d at 363; *Thompson v. Sullivan*, 987 F.2d 1482, 1480-91(10th Cir. 1993) ("pain, even if not disabling, is still a nonexternal impairment to be taken into consideration, unless there is substantial evidence for the ALJ to find that the claimant's pain is insignificant."). Here, outside of boilerplate language, there is no suggestion that the ALJ accounted for Claimant's sciatic pain at any point in his opinion

or deemed it insignificant. Furthermore, although the ALJ relied on and adopted Dr. Yoakam's findings as it pertains to Claimant's RFC, it appears that Dr. Yoakam also did not consider Claimant's records regarding sciatic pain. (Tr. 27, 71).

The ALJ's error therefore *was not* harmless, because the ALJ entirely failed to consider Claimant's sciatic pain in his opinion, much less consider the "cumulative effect of [C]laimant's impairments," at step four. *Langley*, 373 F.3d at 1123. *See also Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) ("In deciding Ms. Hamby's case, the ALJ concluded that she had many severe impairments at step two. He failed to consider the consequence of these impairments, however, in determining that Ms. Hamby had the RFC to perform a wide range of sedentary work.") (unpublished). It is possible the ALJ did consider Claimant's sciatic pain and, by virtue of omission, deemed it was not a medically determinable impairment, non-severe, or resulted in no functional limitations. However, "the Commissioner's regulations demand a more thorough analysis." *Wells v. Colvin*, 727 F.3d 1061, 1069; *See* 20 C.F.R. § 404.1523 ("[W]e will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.'").

## II.    Obesity

The first error is carried through to the second, the ALJ's evaluation of Claimant's obesity. Soc. Sec. R. 19-2p requires an ALJ to consider that "[t]he combined effects of obesity with another impairment(s) may be greater than the effects of each of the impairments considered separately." Soc. Sec. R. 19-2p, 2019 WL 2374244, at *4 (May 20, 2019). "Obesity in combination with another impairment may or may not increase the

severity or functional limitations of the other impairment(s)." *Id.* at *2. Here, it is clear the ALJ considered Claimant's obesity, determined it was non-severe, and concluded the "longitudinal treatment record contains no evidence of any specific or quantifiable impact of obesity on her musculoskeletal, respiratory or cardiovascular functioning." (Tr. 22). However, the record *does* reflect that Claimant was diagnosed with sciatic pain, experienced arthralgias and hip pain prior to and after her DLI in addition to presenting with a positive foraminal compression and kemp sign test in January 2024. (Tr. 636-38, 646-48, 771-75, 779-83, 791). The ALJ did not consider Claimant's sciatic nerve pain, singly, much less *how* it, as a coexisting impairment to Claimant's obesity, affected the RFC. *See e.g.*, *Fleetwood v. Barnhart*, 211 Fed. Appx. 736, 741-42 (10th Cir. 2007) ("[the] combined effect of obesity with other impairments can be greater than effects of each single impairment considered individually[,] and . . . obesity must be considered when assessing RFC.") (citing Soc. Sec. R. 02-1p, 2002 WL 34686281, *1, *5-*7). Accordingly, the Court finds the ALJ erred in not considering Claimant's obesity with her other impairments.

## III.    Subjective Statements

Claimant next posits that the ALJ committed reversible error in analyzing Claimant's subjective statements as it pertains to both Claimant's physical and mental limitations. The Commissioner uses a two-step process to evaluate a claimant's subjective statements of pain or other symptoms:

> First, we must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second ... we evaluate the intensity and persistence of those symptoms to determine the

-11-

extent to which the symptoms limit an individual's ability to perform work-related activities . . .

Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *3 (October 25, 2017).[3] Tenth Circuit precedent is in alignment with the Commissioner's regulations but characterizes the evaluation as a three-part test. *See e. g., Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166-67 (10th Cir. 2012) (citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987)).[4] As part of the symptom analysis, the ALJ should consider the factors set forth in 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3), including: (i) daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (v) treatment for pain relief aside from medication; (vi) any other measures the claimant uses or has used to relieve pain or other symptoms; and (vii) any other factors concerning functional limitations. *See* Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *7-8. An ALJ's symptom evaluation is entitled deference unless the Court finds that the ALJ misread the medical evidence as a whole. *See Casias*, 933 F.2d at 801. An ALJ's findings regarding a claimant's symptoms "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v.*

---

[3] SSR 16-3p is applicable for decisions on or after March 28, 2016, and superseded SSR 96-7p, 1996 WL 374186 (July 2, 1996). *See* SSR 16-3p, 2017 WL 5180304, at *1. SSR 16-3p eliminated the use of the term "credibility" to clarify that subjective symptom evaluation is not an examination of [a claimant's] character." *Id.* at *2.

[4] Analyses under SSR 16-3p and *Luna* are substantially similar and require the ALJ to consider the degree to which a claimant's subjective symptoms are consistent with the evidence. *See, e.g., Paulek v. Colvin*, 662 Fed. Appx. 588, 593-94 (10th Cir. 2016) (finding SSR 16-3p "comports" with *Luna)* and *Brownrigg v. Berryhill*, 688 Fed. Appx. 542, 545-46 (10th Cir. 2017) (finding the factors to consider in evaluating intensity, persistence, and limiting effects of a claimant's symptoms in 16-3p are similar to those set forth in *Luna*).

*Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). The ALJ is not required to perform a "formalistic factor-by-factor recitation of the evidence[,]" *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000), but simply "recit[ing] the factors" is insufficient. *See* Soc. Sec. Rul. 16–3p, 2017 WL 5180304 at *10.

As it pertains to Claimant's mental health, Claimant argues the ALJ erred by not discussing all the relevant medical evidence such as Claimant's awkward social behavior and nervous tics such as hand flapping, rubbing her legs, and self-mutilation when angry. The Court does not find ALJ's subjective statement analysis deficient in this regard. Indeed, the ALJ discussed Claimant's emergency department visit, her varied mood, affect, and speech during her primary care visits, her specialized mental health treatment with Carl Albert, and some of her nervous behavior, *i.e.*, hair twirling. (Tr. 25-26). Ultimately, the ALJ found Claimant's statements about the intensity, persistence, and limiting effects of her symptoms inconsistent noting, *inter alia*, the record indicated Claimant showed improvement with medication, demonstrated signs of varied social functioning, and she testified she could shop and engage in social activities with friends and family on a weekly basis. (Tr. 26). The ALJ set out the appropriate analysis and cited evidence supporting his reasons for finding Claimant's subjective complaints were not believable to the extent alleged at step four, *i.e.*, he gave clear and specific reasons that were specifically linked to the evidence in the record. There is no indication that the ALJ misread Claimant's medical evidence, taken as a whole, as it pertains to Claimant's mental limitations at step four. *See Casias*, 933 F.2d at 801.

However, the ALJ did err in his subjective symptom analysis to extent he failed to account for and address Claimant's sciatic pain and hip pain. Indeed, the ALJ's symptom analysis only states the Claimant "can manage her personal care needs, perform household tasks and chores and prepare her own meals[.]" The ALJ wholly failed to explain his conclusion with affirmative links to the record, and his analysis of Claimant's subjective symptoms was therefore defective. *See, e.g.*, *Hardman v. Barnhart*, 362 F.3d 676, 678-79 (10th Cir. 2004); *See also Kepler*, 68 F.3d at 391 (the ALJ must "explain why the specific evidence relevant to each factor led him to conclude the Claimant's subjective complaints were not credible.").

### IV. Medical Opinions of Dr. Scott and Dr. Holloway

Claimant next argues that the ALJ failed to properly assess the medical opinions of the state reviewing psychologists by not adequately addressing the consistency factor. The Court disagreed and finds no error here.

For claims filed on or after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. §§ 404.1520c and 416.920c. Under these rules, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ evaluates the persuasiveness of all medical opinions and prior administrative medical findings by considering a list of factors. *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The factors are: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend

to support or contradict a medical opinion or prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability and consistency are the most important factors in evaluating the persuasiveness of a medical opinion and the ALJ must explain how both factors were considered. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Generally, the ALJ is not required to explain how the other factors were considered. *Id.* However, when the ALJ finds that two or more medical opinions or prior administrative findings on the same issue are equally well-supported and consistent with the record but are not exactly the same, the ALJ must explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

The supportability factor examines how well a medical source supported their own opinion with "objective medical evidence" and "supporting explanations." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). The consistency factor calls for a comparison between the medical opinion and "the evidence from other medical sources and nonmedical sources" in the record. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). The ALJ in this case stated that he found the state psychologists' opinions persuasive and incorporated their findings into his RFC, almost verbatim.

The Court finds the ALJ's treatment of the state agency psychologists' opinions was thorough and sufficient. As to supportability, the ALJ found the opinions supported "with an in-depth explanation regarding the basis for the findings, including noting her mental

-15-

conditions being managed conservatively with medication and a recent examination noting some indication of anxiety, but was otherwise normal." (Tr. 27). Relatedly, the ALJ found the opinions consistent with Claimant's "mental health longitudinal treatment record being conservative and sparse, consisting primarily of medication management through her Primary Care Provider with some improvement." (Tr. 27).

Claimant contends the ALJ failed to (i) explain why his opinion does not differ from the psychological consultants' in light of Claimant's bipolar disorder, (ii) explain how an individual with a history of self-harm retains the ability to handle conflicts with others or accept criticism and instruction from supervisors; and (iii) discuss Claimant's habits indicative of anxiety, such as arm flapping, social awkwardness, and lip/finger picking. Claimant does not, however, point to any substantial or functional differences between the ALJ's assessed RFC and the suggested mental RFC provided by the state reviewing psychologists. The ALJ plainly acknowledged and discussed Claimant's bipolar disorder (as did Dr. Scot and Dr. Holloway), Claimant's incident of self-harm, and some of Claimant's anxious habits. (Tr. 24-26). The evidence does not reflect that Claimant had further mental limitations than those posed in the RFC, and the ALJ clearly considered the findings within both Dr. Scott's and Dr. Holloway's reports while Claimant points to no *medical documentation* providing further limitations. Because she points to no evidence, the Court declines to find error here. *Garcia v. Astrue*, 2012 WL 4754919, at *8 (W.D. Okla. Aug. 29, 2012) ("Plaintiff's mere suggestion that a 'slow gait' might adversely affect his ability to perform the standing and walking requirements of light work is not supported by any authority.").

### V.        Duty to Develop the Record

Finally, Claimant argues the ALJ erred in failing to develop the record by not ordering a consultative examination. The ALJ has an affirmative duty to fully and fairly develop the record as to any impairment suggested by the evidence. *See Hawkins*, 113 F.3d at 1164; *Henrie v. U.S. Dep't of Health & Hum. Servs.*, 13 F.3d 359, 360-61 (10th Cir. 1993). This duty exists even when a claimant is represented by counsel. *Baca v. Dept. of Health & Hum. Servs.*, 5 F.3d 476, 480 (10th Cir. 1993). The court, however, is not required to act as a claimant's advocate, *Henrie*, 13 F.3d at 361, and an ALJ need not "exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning." *Hawkins*, 113 F.3d at 1168. Rather, she must use reasonably good judgment to ensure that the record fully and fairly addresses material issues. *See id.* Here, no request for a consultative examination was made by Claimant's counsel at the administrative level, and "[i]n the absence of such a request . . . [the Court] will not impose a duty on the ALJ to order a consultative examination unless the need for one is clearly established in the record."). *Hawkins v. Charter*, 113 F.3d 1162, 1167 (10th Cir. 1997). Here, the need for a consultative examination is not clearly established in the record. The ALJ reasonably relied on the largely normal results of Dr.  Yokam's evaluation of Claimant. *See Miller v. Comm'r of Soc. Sec. Admin.*, 2024 WL 2844676, at *5 (10th Cir. June 5, 2024) ("[T]he ALJ could reasonably have concluded that he had enough information to make a decision and that developing the record with additional neurological testing was unnecessary."). However, the Court highlights that such an examination would have been helpful in this case to clarify the extent of Claimant's physical impairments along with their specific effects on her

functional limitations, particularly when all her impairments are considered in combination. *See Fleetwood*, 211 Fed. Appx. at 740-41 ("The ALJ's inability to make proper RFC findings may have sprung from his failure to develop a sufficient record on which those findings could be based. The ALJ must make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC.").

Nonetheless, because the ALJ failed to properly evaluate Claimant's subject symptoms, analyze her obesity, and ultimately account for *all* Claimant's impairments, including her sciatic nerve pain at step four, the decision of the Commissioner is reversed and the case remanded to the ALJ for further analysis of all the Claimant's impairments. If such analysis results in any changes to Claimant's RFC, the ALJ should re-determine what work Claimant can perform, if any, and ultimately whether she is disabled.

### Conclusion

In summary, the Court finds that the correct legal standards were not applied by the ALJ, and the decision of the Commissioner is therefore not supported by substantial evidence. The decision of the Commissioner of the Social Security Administration is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 19th day of March, 2026.

_____
**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**